IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE: ) | |
| ) | |
| JAMES CHRISTOPHER COTTON, III ) | Case No. 11-42420-13-drd |
| and LAUREN PATRICE COTTON, ) | |
| ) | |
| Debtors. ) | |

ORDER OVERRULING DEBTORS' OBJECTION TO CLAIM FILED BY TOYOTA MOTOR CREDIT (Doc. No. 106); DENYING APPLICATION FOR DISTRIBUTION OF INSURANCE PROCEEDS (Doc. No. 107); AND DIRECTING CHAPTER 13 TRUSTEE TO RETAIN INSURANCE PROCEEDS

Debtors James and Lauren Cotton filed this Chapter 13 case on May 25, 2011. At the time of filing, they owned a 2008 Toyota Yaris, the purchase of which had been financed by Toyota Motor Credit Corporation. On July 1, 2011, Toyota filed a Proof of Claim in the case, asserting a claim secured by the Yaris in the amount of $14,408.74. The contract rate of interest on the loan is 13.85%.

On August 5, 2013, the Debtors objected to the claim, asserting that the claim should be bifurcated into secured and unsecured portions based on value because the Yaris had not been purchased within 910 days prior to the bankruptcy filing.[1] Toyota did not respond to the objection, and so it was sustained, leaving Toyota with an allowed secured claim in the amount of $11,925, and an unsecured claim of $2,483.74. The Debtors' confirmed Plan had also proposed to bifurcate the claim in the same manner, paying Toyota $11,925 on its secured claim at the Chapter 13 Trustee's rate of interest, then 4.64%. Unsecured claims, including the

---

[1] 11 U.S.C. §§ 1325(a) (hanging paragraph) and 506 permit debtors to bifurcate claims secured by vehicles purchased more than 910 days prior to filing and to thereby reduce the secured portion of the claim to the value of the vehicle.

unsecured portion of Toyota's claim, are expected to receive a *de minimis* distribution under the Plan.

Sometime this year, the Yaris was totaled in an accident. An insurance company thus tendered a check dated June 2, 2015, made payable jointly to Debtor Laura Cotton and Toyota, in the amount of $6,684.55. The dispute here concerns who – the Debtor or Toyota – is entitled to those insurance proceeds.

As of June 22, 2015, the Chapter 13 Trustee had disbursed $10,366.94 in principal and $1,633.06 in interest on Toyota's secured claim. The amount remaining on Toyota's secured claim is $1,558.06. Since no payments have been made to unsecured creditors in this case, its unsecured claim remains at $2,483.74.

Toyota asserts the balance owed on the Debtor's account under the contract terms is $9,136.06 as of June 8, 2015.

After the accident, the Debtors filed the pending Objection to Toyota's claim, as well as an application for distribution of the insurance proceeds. They assert that the insurance proceeds should be used to pay only the remaining portion of Toyota's allowed secured claim, $1,558.06, plus $18.03 on Toyota's unsecured claim, based on the Chapter 13 Trustee's estimated distribution to unsecured creditors of .726%. The Debtors assert they are entitled to keep the remaining $5,108.56 and thus filed an application to have that amount distributed to them. Toyota objects.

Section 1325(a)(5)(B) provides, as relevant here, that the court shall confirm a plan if, with respect to each allowed secured claim provided for by the plan:

(B)(i) the plan provides that --

> (I) the holder of such claim retain the lien securing such claim until the earlier of--

> (aa) the payment of the underlying debt determined under nonbankruptcy law; or
>
> (bb) discharge under section 1328; and
>
> (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law.[2]

Congress added this provision to the Bankruptcy Code as part of the 2005 BAPCPA amendments, and in doing so, Congress "stated unequivocally that the holder of an allowed secured claim will retain the lien securing its allowed secured claim until either (1) the debtor receives a discharge under § 1328 or (2) the *underlying debt under nonbankruptcy law* has been paid."[3] Section 1325(a)(5)(B)(i) is "an attempt to overrule the results of cases under the prior language of Section 1325(a)(5)(B)[ii] that required elimination of the creditor's lien when the allowed secured claim had been paid."[4] In contrast to pre-BAPCPA law, "[t]he focus is no longer on the 'lien securing such claim', rather, the focus is on the underlying debt under state law."[5]

---

[2] 11 U.S.C. § 1325(a)(5)(B). Consistent with this provision, the Debtors' confirmed Plan provided:

> The holder of a secured claim shall retain its lien, until the earlier of the payment of the underlying debt determined under non-bankruptcy law or the discharge under § 1328 and, if the case is dismissed or converted without completion of the plan, the lien also shall be retained by such holder to the extent recognized by applicable nonbankruptcy law. § 1325(a)(5)(B).

Doc. No. 3 at p. 8, ¶ F.

[3] *In re Strzelecki*, 509 B.R. 671, 674 (Bankr. W.D. Ark. 2014).

[4] 8 Collier on Bankruptcy ¶ 1325.06[3][a] (16th ed. rev. 2013) (quoted by *In re Strzlecki*, 509 B.R. at 674).

[5] *In re Strzelecki*, 509 B.R. at 674.

3

Under the plain meaning of the statute, since the Debtors here have not yet received a discharge, Toyota must retain its lien until either (i) they do receive their discharge, or (ii) Toyota's underlying debt under nonbankruptcy law is paid. The Debtors concede this much.[6] The question, then, is whether Toyota's lien covers the proceeds in excess of its allowed secured claim.

On this question, the Debtors do not appear to dispute that the loan and insurance documents gave Toyota a lien in all of the insurance proceeds. Rather, the Debtors rely on *In re Habtemichael*,[7] a pre-BAPCPA case decided by the Honorable Frank W. Koger of this district. The facts of that case are very similar to the situation here. As the Debtors point out, Judge Koger relied on Missouri law, which provides that a loss payable clause in an automobile insurance policy "constitutes a separate and distinct contract between the mortgagee and the insured *up to the amount of the debt secured.*"[8] Judge Koger determined that, under the Bankruptcy Code as it existed at the time in 1996, the creditor's secured claim was limited to value under § 506. Thus, the debtor in that case was entitled to the insurance proceeds in excess of the lender's allowed secured claim.

Missouri law has not changed on this question since *Habtemichael* was decided, and I agree with Judge Koger's analysis that, under Missouri law, Toyota's lien on the insurance proceeds here is limited to "the amount of the debt secured." However, at the time *Habtemichael* was decided, it was reasonable to interpret the Bankruptcy Code as, in effect, reducing the "amount of the debt

---

[6] *See Debtors' Brief in Support of Objection to Claim 13-1 of Toyota Motor Credit Corporation* (Doc. No. 139) at 3 ("The above language makes clear that the holder of an allowed secured claim retains the lien securing its allowed secured claim until (1) debtor receives a discharge under § 1328 or (2) the underlying debt has been paid under nonbankruptcy law.").

[7] 190 B.R. 871 (Bankr. W.D. Mo. 1996).

[8] *Id.* at 873 (quoting *Shelter Mut. Ins. Co. v. Flint*, 837 S.W.2d 524, 530 (Mo. App. 1992)) (emphasis added by Judge Koger).

secured" to the vehicle's value at the time the claim was bifurcated for bankruptcy purposes, rather than when the discharge was entered. Thus, it made sense to hold that the amount of the debt secured was paid when the allowed secured claim was paid.

But § 1325(a)(5)(B) was subsequently modified to change that result. As stated, that provision now prohibits the release of Toyota's lien until discharge or "payment of the underlying debt determined under nonbankruptcy law." Bifurcation of claims into secured and unsecured portions based on value as of a particular date does not occur outside of bankruptcy cases. Thus, if the Debtors were not in a bankruptcy case, then Toyota's underlying debt under nonbankruptcy law would be $9,136.06, and Toyota would be entitled to the entire amount of the insurance proceeds as payment of its security interest. In sum, payment of Toyota's "allowed secured claim" in this bankruptcy case does not pay the "underlying debt determined under nonbankruptcy law," and Toyota's lien in the proceeds cannot be released at this point.

Consequently, Toyota's lien will remain in the insurance proceeds until such time that the Debtors receive their discharge under § 1328.[9] The Debtor's objection to Toyota's Claim No. 13 must therefore be overruled.

Finally, the Chapter 13 Trustee objected to the Debtors' request that any portion of the funds be used to pay Toyota's unsecured claim because the Plan is what is known as a "Base-55" plan, and the exact dividend to unsecured creditors will not be known until the end of the case. That objection is sustained.

ACCORDINGLY, the Debtors' Objection to Claim filed by Toyota Motor Credit (Doc. No. 106) is OVERRULED. The Debtors' Application for Distribution of Insurance Proceeds (Doc. No. 107) is DENIED. The Chapter 13

---

[9] *Accord, In re Norred*, 2011 WL 4433598 (Bankr. D. Or. Sept. 21, 2011)

Trustee is ORDERED to pay to Toyota the sum of $1,558.06 as the remaining balance on its allowed secured claim. In order to protect Toyota's interest in the proceeds remaining after payment of the allowed secured claim, the Chapter 13 Trustee shall hold such proceeds until the Debtors receive a discharge. Upon discharge, the Trustee shall pay the remaining proceeds in accordance with the Plan. In the event that the Debtors do not obtain a discharge, the Trustee shall pay such funds over to Toyota Motor Credit.

    IT IS SO ORDERED.

Dated: 9/22/15                                              /s/ Arthur B. Federman
                                                                             Chief Bankruptcy Judge